The Honorable Gilbert Baker State Senator #17 Cooper Lane Conway, AR 72034
Dear Senator Baker:
I am writing in response to your request for an opinion on the following questions:
 1. Can `impact fees' imposed under the authority of A.C.A. § 14-56-103
(Act 1719 of 2003) be assessed against other governmental entities, such as a state university or other state agency, a local school district or a federal agency?
 2. Are such governmental entities subject to other municipal planning and zoning requirements, such as building permits, rezoning, conditional uses or variance requests?
RESPONSE
There are no clear exemptions on the face of the statute, nor is there any clear basis for inferring a governmental exemption. The answer to your first question thus appears to be "yes," as a general matter, although legislative clarification or judicial interpretation may be necessary to definitively decide the matter. A conclusive answer to your second question will depend upon the particular governmental entity, and the facts surrounding the specific municipal requirement. Public development projects are generally subject to municipal planning authority, whereas the question of whether a public entity is subject to a city's zoning authority might involve a balancing of interests on a case-by-case basis.
Question 1 — Can `impact fees' imposed under the authority of A.C.A. §14-56-103 (Act 1719 of 2003) be assessed against other governmentalentities, such as a state university or other state agency, a localschool district or a federal agency?
The referenced statute authorizes a municipality or a "municipal service agency"[1] to assess a "development impact fee" in order to generate revenue "to offset costs . . . that are reasonably attributable to providing necessary public facilities to new development." A.C.A. §14-56-103 (b) (Supp. 2003).[2] "Development" is defined as "any residential, multifamily, commercial, or industrial improvement to lands within a municipality or within a municipal service agency's area of service[.]" Id. at subsection (a) (2). The fee may be collected "only against a particular new development in reasonable proportion to the demand for additional capacity in public facilities that is reasonably attributable to the use and occupancy of that new development." Id. at (d) (1). The fee is collected "at either the closing on the property by the owner or the issuance of a certificate of occupancy by the municipality. . . . However, a municipal water or wastewater department, waterworks, joint waterworks, or consolidated waterworks system operating under the Consolidated Waterworks Authorization Act, § 25-20-301 et seq., may collect a development impact fee in connection with and as a condition to the installation of the water meter serving the property."Id. at (f) (2).
According to my research, "impact fees" of this nature are a relatively new funding technique for local government to meet the service needs of growing communities. See Blaesser Kentopp, Impact Fees: The SecondGeneration, 38 Wash.U.J.Urb.Contemp.L. 55 (1990). These types of fees have been distinguished from taxes or special assessments on the basis that they are compensation for the use of another's property or improvement and they measure the cost of the demand or need for public facilities as a result of new development. Id. at 65-67
A question that has arisen regarding these so-called "second generation" impact fees that are enacted under state enabling statutes is whether they should be charged to all new developments, or whether exemptions should be provided for public and/or non-profit landowners. Id. at 108. The commentator raising this question observed as follows:
 Although local governments naturally have been sensitive to the harshness of fees charged to public or quasi-public, not-for-profit landowners, the initial approach of most jurisdictions has been to apply the fee `across the board' with no exemptions, to avoid any claims of unfair or unequal treatment by those who would not be exempted.
Id. at 108 (emphasis added).
Turning to the Arkansas "impact fee" statute, the key elements of which are set out above, there is no express exemption for any entity under this legislation. Nor is there any clear basis for inferring legislative intent to extend an exemption in favor of governmental entities. The provision for collecting the fee at either the closing on the property or the issuance of a certificate of occupancy (A.C.A. § 14-56-103 (f) (2) (A)) should perhaps be noted in this regard. It might be contended that this suggests intent to exempt the state, given the fact that ordinarily there would be no transfer of title necessitating a closing in the case of a "development" by the state, and in light of the general exemption of state agencies from local inspection requirements. (See § A.C.A.22-9-213).[3] Cf. Nev. Op. Att'y Gen. 97-29 (Dec. 31, 1997) (opining that the legislature never intended for the State of Nevada to pay impact fees which are to be collected at the same time as building permit fees or when a certificate of occupancy is issued, because the State is not required to obtain local building permits, submit to local inspections, or receive certificates of occupancy). This argument may be countered, however, with the assertion that had the Arkansas General Assembly intended to exempt the state from these impact fees it could easily have done so, as in the case of local permit fees. See A.C.A. § 22-9-213,supra at n. 3.
The Nevada Attorney General also relied upon the general concept of "sovereignty" as a basis for opining that government is exempt from the assessment of local impact fees. Nev. Op. Att'y Gen. 97-29 (citing cases for the rule that laws in derogation of sovereignty are construed strictly in favor of the state). This also buttressed another state Attorney General's conclusion that government was exempt from statutory impact fees. Idaho Op. Att'y Gen. 93-5 (April 7, 1993) (citing Sutherland, Statutory Construction, Statutes in Derogation ofSovereignty, § 62-01 et seq. (1992) and policy reasons for "intergovernmental immunities"). While I cannot determine with certainty that our court would reject this approach to A.C.A. § 14-56-103, it may be instructive that the court declined to adhere to the traditional concept of immunity in determining whether a school district was subject to municipal zoning regulations. See Lavender v. City of Rogers,233 Ark. 161, 343 S.W.2d 103 (1961). This approach to a municipality's zoning authority at least suggests, in my opinion, that the court would not readily infer an intent under A.C.A. § 14-56-103 to exempt other governmental entities from these impact fees.
My research has disclosed no helpful case law on these issues, and I must therefore note that the outcome of any challenge to the statute's applicability is currently unknown. Nevertheless, pending a judicial determination, I believe it is reasonable to conclude that the state and other state political subdivisions are generally subject to the impact fees authorized by A.C.A. § 14-56-103, given the absence of any clear statutory exemption. This general conclusion also applies with respect to a federal agency, although the possibility of a preemptive provision in federal law must be noted. Any issue of federal preemption is outside the scope of this opinion, as that will likely depend upon the particular agency and/or the specific development.
Question 2 — Are such governmental entities subject to other municipalplanning and zoning requirements, such as building permits, rezoning,conditional uses or variance requests?
It is my opinion that the answer to this question is generally "yes" with regard to planning requirements imposed under authority of A.C.A. §14-56-417 (Repl. 1998),[4] because a municipal planning commission's control over development pursuant to this provision is generally not restricted to private entities. Cf. Ark. Op. Att'y Gen. 2003-288
(regarding development activities of the Russellville River Valley Intermodal Facilities Authority). See also A.C.A. § 14-56-412 (f) (1) (Repl. 1998) (requiring that any public development of property contained within the area covered by a municipal plan must be submitted to the planning commission for approval as to its conformity with the plan).[5]
Regarding zoning requirements, it is my opinion that this will depend upon the facts surrounding a particular exercise of zoning authority. This follows from my agreement with one of my predecessors that in the absence of clear legal precedent, the question of whether a public entity is subject to a city's zoning authority may involve a balancing of interests on a case-by-case basis. Op. Att'y Gen. Nos. 92-024 (regarding enforcement of a city zoning ordinance against county owned property) and 91-120 (whether a public school district is subject to a city zoning ordinance).[6] Federal preemption questions may also arise in this regard, as in the case of impact fees noted above. See, e.g., Op. Att'y Gen. 2000-208 (opining that federal law reflects no general intent to limit or exclude local zoning authority with respect to public housing, although the legality of particular zoning regulations is a matter to be decided in each instance).
It is apparent from the foregoing that your general inquiry concerning municipal zoning requirements cannot be definitively answered in this opinion because consideration must be given to the particular regulation, and its application under the relevant facts.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] A "municipal service agency" is defined as:
 (A) Any department, commission, utility, or agency of a municipality, including any municipally owned or controlled corporation;
 (B) Any municipal improvement district, consolidated public or municipal utility system improvement district, or municipally owned nonprofit corporation that owns or operates any utility service;
 (C) Any municipal water department, waterworks or joint waterworks, or a consolidated waterworks system operating under the Consolidated Waterworks Authorization Act, § 25-20-301 et seq.;
(D) Any municipal wastewater utility or department;
(E) Any municipal public facilities board; or
 (F) Any of these municipal entities operating with another similar entity under an interlocal agreement in accordance with § 25-20-101 et seq. or § 25-20-201 et seq.[.]
A.C.A. § 14-56-103 (a) (5) (Supp. 2003).
[2] "Public facilities" are defined under § 14-56-103 (a) (7) as "publicly owned facilities that are one (1) or more of the following systems or a portion of those systems:
 (A) Water supply, treatment, and distribution for either domestic water or for suppression of fires;
(B) Wastewater treatment and sanitary sewerage;
(C) Storm water drainage;
(D) Roads, streets, sidewalks, highways, and public transportation;
(E) Library;
(F) Parks, open space, and recreation areas;
(G) Police or public safety;
(H) Fire protection; and
(I) Ambulance or emergency medical transportation and response.
[3] A.C.A. § 22-9-213 provides:
 Public works construction projects conducted by Arkansas State Building Services [Arkansas Building Authority, see Act 250 of 2003] or other state agencies are exempt from permit fees or inspection requirements of county or municipal ordinances.
I believe it reasonable follows from this provision that a state agency is not required to obtain a certificate of occupancy from a municipality in connection with a state public works construction project. There is no similar statutory exemption, however, for other governmental entities. Accordingly, the argument for an implied exemption in favor of the state would not appear to extend to other governmental entities.
[4] The "development of land," according to this statute, includes, but is not limited to:
(A) The provision of access to lots and parcels;
(B) The extension or provision of utilities;
(C) The subdividing of land into lots and blocks; and
 (D) The parceling of land resulting in the need for access and utilities.
[5] In accordance with A.C.A. § 14-56-412 (d), municipal plans may include, but are not limited to:
(1) A master street plan;
(2) A land use plan; and
(3) A community facilities plan.
If the planning commission does not act within sixty days of submission, the proposal is deemed approved Id. at subsection (f) (3). The commission's disapproval of a proposal may be overruled by a 2/3 vote of the submitting public body. Id. at (f) (2).
[6] With regard, specifically, to local building requirements, reference should be made to A.C.A. § 22-9-213 which, as noted above, exempts state agencies' public works construction projects from municipal permit fees or inspection requirements. It is my opinion that this does not equate to a general exemption from municipal zoning.